# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| THE FALLON PAIUTE-SHOSHONE TRIBE and the CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, JAKE VIALPANDO, in his official capacity as Field Manager of the Bureau of Land Management Stillwater Field Office, and ORMAT NEVADA, INC.,<br><br>Defendants. | Case No. 3:21-CV-00512-RCJ-CSD<br><br>**ORDER** |

Before this Court is Defendant's, Department of Land Management and Jake Vialpando, in his official capacity as Field Manager of the Bureau of Land Management Stillwater Field Office ("the Government"), Motion to Stay. (ECF No. 75). The Government moved to stay this Action because the facts of the case may change dramatically, depending on an Endangered Species Act ("ESA") Section 7 consultation. Co-Defendant, Ormat Nevada, Inc. ("Ormat"), supports the Motion. Plaintiffs, the Fallon Paiute-Shoshone Tribe, and the Center for Biological

Diversity ("Plaintiffs") oppose the Motion to Stay. Additionally, the parties moved to file additional documents regarding the Motion to Stay. (ECF Nos. 82, 83, 84, 85 & 86).[1] The Government and Ormat (collectively "Defendants") met their burden to stay the Action. The Court will Grant the Motion to Stay and stay the action in accordance with this Order. (ECF No. 75).

**FACTUAL BACKGROUND**

The Court previously discussed the background of this case in the Order denying Plaintiffs' motion for a restraining order and a preliminary injunction. (ECF No. 41 at 2-4). Since that Order, Defendants moved to stay the Action because "the circumstances of this case have fundamentally changed." (ECF No. 85; Ex. 1 at 3). Originally, in November of 2021, the Bureau of Land Management ("BLM") approved Ormat's application to construct a geothermal power plant with two power plants and a total capacity of up to 60 megawatts ("MW"). (ECF No. 75 at 3). To do so, the BLM asked for public comment on a draft environmental assessment ("EA") to determine the power plant's environmental impact. (*Id*.). The BLM then revised the EA based on the public's comments, published a decision record, and issued a Finding of No Significant Impact ("FONSI") on the environment from the power plant. (*Id*. at 5). Subsequently, Plaintiffs brought an action in December 2021 that challenged the EA and FONSI to stop the power plant construction. (ECF No. 1). The Action alleges that the power plant would destroy an area used for

---

[1] The parties submitted four motions to submit supplement evidence and surreplies: Defendants' Motion to Submit Supplemental Evidence (ECF No. 83), Plaintiffs' Motion to Submit a Surreply (ECF No. at 84), Defendants' Motion to Submit Reply to Plaintiffs' Surreply (ECF No. at 85), Ormat's Motion to Submit Surreply (ECF No. 86). The Court grants these motions and considers the arguments therein. Further, the parties submitted a Joint Stipulation informing the Court that the parties intended to file the aforementioned motions. The Court grants the joint stipulation.

religious purposes and adversely affect the Dixie Valley Toad. (*Id.*). Defendants denied these allegations and construction moved forward.

Construction stalled for many reasons, and the BLM provided Ormat with a proposal to scale down the power plant project from 60 MW to 12 MW. (ECF No. 75; Ex. 1 at 1). Ormat proceeded with that suggestion and submitted a revised geothermal utilization plan to the BLM. (ECF No. 83 at 3). Because Ormat changed the project, the BLM must do a consultation under Section 7 of the ESA to determine the environmental impact on the Dixie Valley Toad and the surrounding area. (*Id.*) Defendants argue, and Plaintiffs acknowledge, that the ESA Section 7 consultation could render Plaintiffs' claims moot if the BLM finds that the power plant would adversely impact the environment. (ECF No. 84; Ex. 1 at 7) (Plaintiffs "acknowledge that the … outcome of the pending ESA consultation, may alter their substantive claims"). Therefore, the ESA Section 7 consultation could change the case altogether.

Defendants asked this Court to stay the Action until the BLM finished the ESA Section 7 consultation to determine the environmental impact on the Dixie Valley toad. (*Id.*) If granted, Defendants would not proceed with construction until the BLM finished the ESA Section 7 consultation. (*Id.*) Plaintiffs opposed the Motion to Stay, arguing that their claims did not depend on the newly proposed 12 MW project. (ECF No. 79). Defendants counter and argue that Plaintiffs' claims depend on the ESA Section 7 consultation because it may render their claims moot. (ECF No. 75). Defendants argue that litigating claims based on the 12 MW plan would be futile until the BLM finishes the ESA Section 7 consultation because the facts of the case may change depending on the outcome of the consultation. (*Id.*)

## LEGAL STANDARD

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for

litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Courts should consider three factors when weighing a motion to stay: "(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX*, 300 F.2d at 268). The proponent of a stay bears the burden of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708, (1997).

## ANALYSIS

**1. Possible Damage**

The BLM's decision to rescind the authorization for the 60 MW power plant mitigates the possible damage that Plaintiffs face from staying the case because the decision halted construction.[2] "[I]f there is even a fair possibility that the stay ... will work damage to some one else," the moving party "must make out a clear case of hardship or inequity." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see also Lockyer.*, 398 F.3d at 1112. There is not a fair possibility that the stay will work to damage Plaintiffs' interests. Plaintiffs' primary concern in this Action is saving the Dixie Valley toad from possibly becoming extinct due to the construction and operation of the power plant. However, the newly released BLM decision makes it clear that Defendants cannot proceed with any construction on the power plant until BLM finishes the ESA Section 7 consultation. (ECF No. 83 Ex. 1 at 8) ("No new construction of the geothermal power plant, gen-tie line, or other utilization-related facilities is authorized until ESA Section 7 consultation is complete and only if USFWS determines that the construction and operation of the Project or a

---

[2] Defendants, as the moving party, do not face any harm from the stay.

reasonable and prudent alternative to the 12MW Plan is not likely to jeopardize the Dixie Valley toad."). Without further construction, there is no potential harm to the Dixie Valley toad, Plaintiffs' primary interest. Beyond further construction, staying the action does nothing to make the "partially constructed powerplant" harm Plaintiffs any further. (ECF No. 84 Ex. 1 at 7). Accordingly, neither party faces harm from staying this action.

### 2. Hardship or Inequity That Parties May Face

The Court considers any hardship Defendants may face if the Action goes forward because Defendants moved to stay the Action. *Lockyer*, 389 F.3d at 1110. However, Defendants do not face any hardship or inequity from requiring this case to go forward. Defendants argue that they do not have enough staff to handle the Power Plant construction and the litigation. The Court does not buy that argument because "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Id.* at 1112.

### 3. Simplifying the Issues

Granting a stay in this Action is necessary because allowing this case to go forward would only muddy the waters and make the issues more complex. The Court considers whether granting the stay will simplify or complicate the issues to determine whether the stay contributes to the orderly course of justice. *See CMAX*, 300 F.2d at 268. Granting a stay in this Action allows the BLM to finish the ESA Section 7 consultation and determine whether Defendants can build the Power Plant. The ESA Section 7 consultation is essential to Plaintiffs' claims and might even "alter their substantive claims under ESA Sections 7 and 9, as well as their claim under FLMPA." (ECF No. 84 at 7). Denying the stay will force the parties to go forward with uncertainty as to whether the legal claims will exist after the ESA Section 7 consultation. Without a doubt, granting a stay in this Action contributes to simplifying the issues.

Within fourteen (14) days of completion of the ESA Section 7 consultation, the parties

shall file a joint status report, briefly outlining the resolution of the ESA Section 7 consultation and proposing a new case schedule. If needed, the Court will allow for a status conference to ensure that Defendants do not start construction before ESA Section 7 consultation is complete. The Court is very sensitive to Plaintiffs' concern that Defendants will start construction. Accordingly, should Defendant start construction or circumstances otherwise change such that lifting the stay is warranted, either party may move to lift the stay. Once the stay is lifted, the court will enter a new scheduling order as soon as practicable.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Stay is **GRANTED** in accordance with this Order. (ECF No. 75).

IT IS FURTHER ORDERED that the Joint Stipulation for a Stay is **DENIED** as moot. (ECF No. 82).

IT IS FURTHER ORDERED that the Motions to file additional evidence and surreplies are **GRANTED**. (ECF Nos. 83, 84, 85 & 86).

IT IS SO ORDERED.

Dated this 14th day of February 2023.

_____
ROBERT C. JONES
United States District Judge